IN THE UNITED STATES DISCTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KETAN DESAI

        Plaintiff

Vs

CHRISTOPHER CLARK and
R. S. INVESTMENTS

        Defendants

CIVIL ACTION NO: 09-2957

RESPONSE TO BRIEF REGARDING MORE DEFINITE STATEMENT, DATED SEP 29, 2010.

The Plaintiff, Ketan Desai MD PhD, responds to the motion filed on September 1, 2010 by Defendants Christopher Clark and R. S. Investments (collectively "Defendants") and their counsel Mr. Malcolm Gross.

1. STATEMENT OF PERTINENT FACTS: The plaintiff contests the characterization of the motion on page 4, paragraph three, that contends that the "Second Complaint" differed materially from the "First Complaint". The "Second Complaint" detailed the charges bought against the Defendants that they claim is missing and are, surprisingly, asking greater detail for. Therefore, this response will describe in even greater detail the libel, slander, and defamation carried out by "Defendants".

2. QUESTION PRESENTED: Suggested response: No, since the details are being presented in 3.

3. DETAILS OF CASE:

a) To first apprise the court as to my background, I am a board certified internist and rheumatologist with a PhD in molecular biology. I have 15 years experience in the pharmaceutical industry. I have a consulting business with biotechnology, pharmaceutical, and financial companies as my clients. These companies seek

      my expertise in science, clinical trials and drug development. I also the founder of a biotechnology company that is developing drugs for the treatment of cancer, post-traumatic disorder, and Alzheimer's Disease. Finally, I write articles for an online financial website, SeekingAlpha.com (SA). SeekingAlpha.com is a premier and reputed online financial news site, with more than a million views every day. It is frequented by financial analysts, money managers, executives from respective industries, as well as individual investors.

b) In 2008, a company by the name of Myriad Genetics came to my attention. It was developing a drug for Alzheimer's Disease named Flurizan. After evaluating the drug, I wrote an article in SA stating that the drug would fail in its phase III pivotal trials (http://seekingalpha.com/article/77022-myriad-options-on-alzheimers-disease). The article was published on May 13, 2008. The drug was a highly anticipated drug for which Myriad had received $100 million from another company (http://investor.myriad.com/releasedetail.cfm?releaseid=325473). I also wrote that I had shorted (i.e. bet against) the shares of Myriad at $55/share.

c) On June 30, Myriad announced that the drug had failed. I wrote an article (http://seekingalpha.com/article/83321-myriad-genetics-i-told-you-so) on the trial results. I also stated that I did not think the burn rate (i.e. company expenses) would go down substantially.

d) In response to my article, Mr. Christopher W. Clark of RS Investments writing under the pseudonym Seadog wrote:

> Being right or making money. On May 13th (when you told us so) the stock closed at $41.25. After the negative news it never broke below $45. How exactly did you make money on this put trade again? And you doubt the rationale that they will be profitable in FY09? They are roughly break even right now and have substantial net outstanding losses. The diagnostics business is hugely profitable (45% operating margins when not spending on their DTC campaign, 40% when they are) and growing rapidly. When you have sustainable revenue, cut spending on dead programs and pay no taxes, that falls to the bottom line. $60mm/45mm shares = $1.33 from cutting that program alone. Nothing in their pipeline warrants a trial near the scale that they undertook with Flurizan – that spend level is not coming back. Stick with collecting degrees, Doc. Maybe try English next – one datum leads but many data lead.

e) Mr. Clark libeled, misrepresented my position, and slandered me on two accounts:
1). He stated that I had advised shorting MYGN at 41, when in fact I had done so at 55.
2). He stated that I was skeptical about MYGN becoming profitable, when in fact I wrote that I was skeptical that the burn rate would go down significantly since

most of the Flurizan expenses had already taken place, and that there was a pipeline of compounds being developed that would still require expenses.

f) In addition to the libel, Mr. Clark's gratuitously insulting language and denigration of my education has caused great damage to my reputation. This is particularly serious since a lot of investment firms and biotechnology companies are my clients and reflect a malign intent on his part.

g) In addition to the above, Mr. Clark obstructed my attempts to rebut his lies when he asked the website to delete my rebuttals. This left me with no way to respond to his lies and left a reader of the article with a false impression about my positions.. In fact, my account was suspended for a year due to his manipulations.

h) Since Mr. Clark is employed by RS Investments, the lawsuit is also filed against RS Investments. At trial, the court will be shown email exchanges between me and Mr. Ben Douglas, where Mr. Douglas accepted the error by Mr. Clark and also accepted the responsibility of RS Investments. However, RS Investments refused to any meaningful restitution, including my offer to take this dispute to a neutral arbitrator. Mr. Douglas kept offering to write a letter of apology to my clients, disregarding all the people who read my article and Mr. Clark's statements and who cannot be identified. Mr. Douglas also kept insisting that this was a difference of opinion between me and Mr. Clark, whereas this is not a question of opinion, but rather a mischaracterization of someone's position.

i) In addition, Mr. Douglas slandered me when he called me a "delusional egomaniac" in an email to his employees.

j) Therefore, this suit seeks damages from Mr. Clark and RS Investments for slander/libel.

4. DISCUSSION/ARGUMENT

a) While there is freedom of expression in the United States, there is no freedom to misrepresent someone else's statements. Mr. Clark clearly did so as discussed above, and is therefore liable.

b) Intent is important as well in this case. Mr. Douglas stated in his emails (which will be presented in the trial) that anyone could have gone back to my original post and seen that I had recommended shorting Myriad at a higher price. If that was the case, why was Mr. Clark not able to? The only answer is that his intentions were malign from the beginning and his post was meant merely to smear my reputation, as evidenced by his gratuitously insulting language. This is buttressed by the email by Mr. Douglas in which he referred to me as a "delusional egomaniac", demonstrating that this was not merely an individual action but could represent company policy. It is worth noting that at that time, RS

Investments was an investor in Myriad Genetics, and anyone advocating shorting Myriad was a financial adversary.

5. DAMAGES SOUGHT:

Compensatory Damages:
   a. Over the past two years, my consulting income has dropped by more than $200,000. I don't claim this to be all due to Mr. Clarks lies, but in a recessionary environment, where companies are extra careful about whom they do business with, I claim that this had a not insignificant effect. Evidence of this loss will be presented during the trial.
   b. As mentioned earlier, I have a biotechnology company that is developing drugs for Alzheimers Disease. I had applied for a grant of $150,000 from the National Institutes of Health for clinical studies on my patented drug. This grant was turned down, and one of the comments related to the dispute at hand. Evidence for this will be presented during the trial. Compensation for this is also being sought.

Punitive Damages:
This is up to the Court's discretion.

6. TRIAL
I request a Jury Trial.

7. CONCLUSION
I have demonstrated to the Court in detail the libel committed and damages incurred. I request that a trial now be initiated to bring this matter to a close.

Sincerely

Ketan Desai MD PhD
September 29, 2010
1175 Spring Road, Easton, PA, 18040.