IN THE UNITED STATES DISCTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

KETAN DESAI

        Plaintiff

Vs

CHRISTOPHER CLARK and
R. S. INVESTMENTS

        Defendants

FILED
JUN 2 7 2011
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

CIVIL ACTION NO: C 11 -01809 DMR

The Plaintiff, Ketan Desai MD PhD, responds to the motion by defense to dismiss the case against Christopher Clark and R. S. Investments (collectively "Defendants") dated June 16, 2011

1. DETAILS OF CASE:

   a) To first apprise the court as to my background, I am a board certified internist and rheumatologist with a PhD in molecular biology. I have 15 years experience in the pharmaceutical industry. I have a consulting business with biotechnology, pharmaceutical, and financial companies as my clients. These companies seek my expertise in science, clinical trials and drug development. I also the founder of a biotechnology company that is developing drugs for the treatment of cancer, post-traumatic disorder, and Alzheimer's Disease. Finally, I write articles for an online financial website, SeekingAlpha.com (SA). SeekingAlpha.com is a premier and reputed online financial news site, with more than a million views every day. It is frequented by financial analysts, money managers, executives from respective industries, as well as individual investors. My articles have about 5,000 – 10,000 readers.

   b) In 2008, a company by the name of Myriad Genetics came to my attention. It was developing a drug for Alzheimer's Disease named Flurizan. After evaluating the drug, I wrote an article in SA stating that the drug would fail in its phase III pivotal trials (http://seekingalpha.com/article/77022-myriad-options-on-

alzheimers-disease). The article was published on May 13, 2008. The drug was a highly anticipated drug for which Myriad had received $100 million from another company (http://investor.myriad.com/releasedetail.cfm?releaseid=325473). I also wrote that I had shorted (i.e. bet against) the shares of Myriad at $55/share.

c) On June 30, Myriad announced that the drug had failed. I wrote an article (http://seekingalpha.com/article/8332 1-myriad-genetics-i-told-you-so) on the trial results. I also stated that I did not think the burn rate (i.e. company expenses) would go down substantially.

d) In response to my article, Mr. Christopher W. Clark of RS Investments writing under the pseudonym Seadog wrote:

Being right or making money. On May 13th (when you told us so) the stock closed at $41.25. After the negative news it never broke below $45. How exactly did you make money on this put trade again? And you doubt the rationale that they will be profitable in FY09? They are roughly break even right now and have substantial net outstanding losses. The diagnostics business is hugely profitable (45% operating margins when not spending on their DTC campaign, 40% when they are) and growing rapidly. When you have sustainable revenue, cut spending on dead programs and pay no taxes, that falls to the bottom line. $60mm/45mm shares = $1.33 from cutting that program alone. Nothing in their pipeline warrants a trial near the scale that they undertook with Flurizan – that spend level is not coming back. Stick with collecting degrees, Doc. Maybe try English next – one datum leads but many data lead.

e) Mr. Clark libeled, misrepresented my position, and slandered me on two accounts:

1). He stated that I had advised shorting MYGN at 41, when in fact I had done so at 55.

2). He stated that I was skeptical about MYGN becoming profitable, when in fact I wrote that I was skeptical that the burn rate would go down significantly since most of the Flurizan expenses had already taken place, and that there was a pipeline of compounds being developed that would still require expenses.

f) In addition to the libel, Mr. Clark's gratuitously insulting language and denigration of my education has caused great damage to my reputation. This is particularly serious since a lot of investment firms and biotechnology companies are my clients and reflect a malign intent on his part.

g) In addition to the above, Mr. Clark obstructed my attempts to rebut his lies when he asked SA to delete my rebuttals. This left me with no way to respond to his lies and left a reader of the article with a false impression about my positions.. In fact, my account was suspended for a year due to his a acts.

h) Since Mr. Clark is employed by RS Investments, the lawsuit is also filed against RS Investments. At trial, the court will be shown email exchanges between me and Mr. Ben Douglas, general counsel for RS Investments, where Mr. Douglas accepted the error by Mr. Clark. However, RS Investments refused to any meaningful restitution, including my offer to take this dispute to a neutral arbitrator. Mr. Douglas kept offering to write a letter of apology to my clients, disregarding all the people who read my article and Mr. Clark's statements and who cannot be identified. Mr. Douglas also kept insisting that this was a difference of opinion between me and Mr. Clark, whereas this is not a question of opinion, but rather a mischaracterization of someone's position.

i) In addition, Mr. Douglas slandered me when he called me a "delusional egomaniac" in an email to his employees.

j) Therefore, this suit seeks damages from Mr. Clark and RS Investments for slander/libel.

2. DISCUSSION/ARGUMENT

The motion is full of errors and misrepresentation. These are detailed below:

A: Page 1, IIA. Defense claims the case was filed "on or about July 1". Defense should pay attention to detail, since case was filed on June 29, 2009.

B: Section III, ARGUMENT: Defense claims the complaint fails to state a claim on which relief may be granted. This has been detailed in 1, Details of the Case.

C: Section III, ARGUMENT, A: Plaintiff has clearly showed that the material posted by the defendant Mr. Clark was false. Defense should have paid attention to I, Details of the Case, b and d.

D: Section III, ARGUMENT A: Defense claims that the posting was not defamatory. Any reasonable person would agree with plaintiff that the comments by Mr. Clark were injurious statement of fact, since he misrepresented when I had shorted the stock. This was not an issue of

opinion, but clear misrepresentation of fact.

E. Section III, ARGUMENT, B1: If Mr. Clark's statement were merely an opinion, why did R. S. Investments offer to write a letter of apology?

F. Section III, ARGUMENT B1: Mr. Clarks comment "How exactly did you make money" has to seen in context of his previous statement implying that I had lied about when I had shorted the stock.

G. Section III, ARGUMENT B1: Mr. Clark again mischaracterized my statements when I had said I doubted Myriad Genetics burn rate would go down, whereas he stated that I had said that I doubted that they would be profitable in 2009. This is a clear mischaracterization of my position not a difference of opinion.

H: Section III, ARGUMENT B2 page 8: As above, in addition to which the denigrating nature of Mr. Clarks comments were intended to "subject plaintiff to hatred, contempt, or Obloquy". It clearly "tends to directly injure plaintiff in respect to his office, profession, trade, or business that has a natural tendency to lessen its profits", to quote the motion.

I: Section III, ARGUMENT B2 page 8: Defense contends that a court is not a jurisdiction for defamation, but it should be left to the web. The Defense may have conveniently forgotten that Mr. Clark had my replies deleted, leaving me no avenue to address his lies.

J: Section III, ARGUMENT C: Defense, again, has conveniently overlooked the fact that Mr. Douglas sent the email to me, not to his employees.

K: Section III, ARGUMENT D: This argument is rather ridiculous, since I cannot find the 5000 readers who have read my article to ask them if they understood the defamation. In a court, it is sufficient to demonstrate that a reasonable person with a reasonable level of understanding, who would typify a SeekingAlpha reader, would in fact understand the comments and recognize it as denigrating.

L: Section III, ARGUMENT D: Once again, Defense needs to pay attention to detail. My complaint above makes no mention of the NIH grant. But for historical purposes, the grant was denied but the Department of Defense refused to get involved in this trial, and so I have not used the grant rejection in 1 above.

M: A precedent to view this case is that of *Dawn Simorangkir Vs Courtney Love*, filed in Los Angles, California, in 2009. Simorangkir filed a lawsuit against the rocker and widow of Curt Cobain in 2009 after claiming she was defamed in a series of messages Love posted on Twitter.com. The fashion designer accused the singer of ruining her business by posting messages on Twitter that were derogatory to Simorangkir. Love insisted her online comments were opinion, and therefore protected under law. The court disagreed, and the matter was to go to trial but was settlled out of court for $430,000. This precedent shows that defamation and libel can and should be prosecuted under law.

## 3. CONCLUSION

I have demonstrated to the Court in detail the libel committed and damages incurred and the lack of ground for dismissal of the case as requested by Defense. Consequently, I request that a trail be held or case referred for mediation, and the motion by defense be denied.

Sincerely

*[signature]*

Ketan Desai MD PhD, 1175 Spring Road, Easton, PA, 18040.
June 26, 2011,

CC: Attorney for Defense

ROBERT CHARLES WARD
rward@sflaw.com
fax 415-421-2922.