UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KETAN DESAI, | No. C-11-01809-DMR |
| Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| CHRISTOPHER CLARK and RS INVESTMENTS, | |
| Defendants. | |

Defendants Christopher Clark ("Clark") and RS Investments ("RS") (together, "Defendants") move the court pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff Ketan Desai's ("Plaintiff") complaint for failure to state a claim upon which relief can be granted. Specifically, Defendants contend that Plaintiff "has failed to plead all elements necessary to state a *prima facie* case of defamation" as articulated in California State law and, in the alternative, that "the statements on which Plaintiff sues for defamation are not, as a matter of law, defamatory." (Mem. of P. & A. in Supp. of Defs.' Mot. to Dismiss ("Defs. Mot.") 1.) Plaintiff opposes the motion on all grounds. (*See generally* Pl.'s Opp'n.) For the reasons stated below, the court grants Defendant's Motion to Dismiss.

**I. Background & Procedural History**

On July 1, 2009, Plaintiff, proceeding *pro se*, filed a complaint against Defendants in the Eastern District of Pennsylvania, alleging that they defamed him during an Internet blog exchange on the financial news website SeekingAlpha.com ("SA"). After much procedural confusion (*see, e.g.*, Defs. Mot. 1-2), on April 7, 2011, the court dismissed the complaint for want of personal jurisdiction over Defendants and ordered the case transferred to the Northern District of California.

In his amended complaint, Plaintiff describes himself as a board certified internist and rheumatologist with a doctorate in molecular biology who owns a "consulting business with biotechnology, pharmaceutical, and financial companies" as clients. (Am. Compl. ¶ 3(a).) These clients seek out his "expertise in science, clinical trials and drug development." (Am. Compl. ¶ 3(a).) In addition, Plaintiff states that he founded a biotechnology company developing drugs to treat "cancer, post-traumatic disorder, and Alzheimer's Disease." (Am. Compl. ¶ 3(a).) He also writes articles for SA, which he describes as "a premier and reputed online financial news site, with more than a million views every day." (Am. Compl. ¶ 3(a).)

On May 13, 2008, Plaintiff published an article on SA in which he discussed a company by the name of Myriad Genetics, which was developing a drug named Flurizan to treat Alzheimer's Disease. (Am. Compl. ¶ 3(b).) In the article, Plaintiff opined that the drug, research for which the company had obtained $100 million in funding from another firm, "would fail in its phase III pivotal trials." (Am. Compl. ¶ 3(b).) He also stated that he had shorted the firm's shares at $55. (Am. Compl. ¶ 3(b).) After Myriad Genetics announced Flurizan's failure on June 30, 2008, Plaintiff wrote another article for SA, in which he stated that he "did not think the burn rate (i.e. company expenses) would go down substantially." (Am. Compl. ¶ 3(c).)

In response to this second article, Defendant Clark, employing the pseudonym Seadog, made the following comment:

> Being right or making money. On May 13th (when you told us so) the stock closed at $41.25. After the negative news it never broke below $45. How exactly did you make money on this put trade again? And you doubt the rationale that they will be profitable in FY09? They are roughly break even right now and have substantial net outstanding losses. The diagnostics business is hugely profitable (45% operating margins when not spending on their DTC campaign, 40% when they are) and growing rapidly. When you have sustainable revenue, cut spending on dead

1 programs and pay no taxes, that falls to the bottom line. $60mm/45mm shares =
2 $1.33 from cutting that program alone. Nothing in their pipeline warrants a trial near
the scale that they undertook with Flurizan -- that spend level is not coming back.
3 Stick with collecting degrees, Doc. May try English next -- one datum leads but
many data lead.

(Am. Compl. ¶ 3(d).)

According to Plaintiff, in this blog entry Clark "misrepresented [Plaintiff's] position" and defamed him on two accounts: (1) "[Clark] stated [with malicious intent] that [Plaintiff] had advised shorting MYGN [Myriad Genetics's stock] at 41 [dollars per share], when in fact [Plaintiff] had done so at 55," and (2) "[Clark] stated that [Plaintiff] was skeptical about MYGN becoming profitable, when in fact [Plaintiff] wrote that [he] was skeptical that the burn rate would go down significantly" because "most of the Flurizan expenses had already taken place, and that there was a pipeline of compounds being developed that would require expenses." (Am. Compl. ¶ 3(e); *see* Am. Compl. ¶ 3(f).) Further, Plaintiff complains that Clark's "gratuitously insulting language and denigration of [his] education has caused great damage to [his] reputation," which he avers is especially problematic because many of his clients are "investment firms and biotechnology companies." (Am. Compl. ¶ 3(f).) Plaintiff also believes that Clark compounded these acts when Clark allegedly asked SA to delete Plaintiff's rebuttals, as Plaintiff had "no way to respond to [Clark's] lies and left a reader of the article with a false impression about [Plaintiff's] positions." (Am. Compl. ¶ 3(g).) Consequently, Plaintiff brought suit against Clark to redress these alleged harms.

Plaintiff also filed suit against Defendant RS "[s]ince Mr. Clark is employed [there]." (Am. Compl. ¶ 3(h).) Plaintiff asserts that email exchanges between Ben Douglas ("Douglas"), RS's general counsel, and himself demonstrate that "Mr. Douglas accepted the error by Mr. Clark and also accepted the responsibility of RS Investments," even though RS has refused to provide Plaintiff with restitution. (Am. Compl. ¶ 3(h).) Plaintiff accuses Douglas of slandering him as well when Douglas referred to Plaintiff as a "delusional egomaniac" in an email to his employees. (Am. Compl. ¶ 3(i).)

Plaintiff believes that these allegedly defamatory acts substantially contributed to the $200,000 drop in consulting income that he has suffered over the past two years. (Am.

3

1  Compl. ¶ 5(a).)  Similarly, he states that the National Institutes of Health denied him a grant for

2  developing a drug for Alzheimer's Disease due to, *inter alia*, Clark's statements.  (Am. Compl.

3  ¶ 5(b).)

## II.  Dismissal for Failing to State a Claim

When reviewing a motion to dismiss for failing to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case "only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citation & quotation marks omitted).  When a complaint presents a cognizable legal theory, the court may grant the motion if the complaint lacks "sufficient factual matter to state a facially plausible claim to relief." *Id.* (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)).  A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citation omitted).

## III. Defamation

### A. Legal Standard

In the present action, Plaintiff has set forth a cognizable legal theory for the basis of his complaint: defamation.  Under California law, to state a prima facie case of defamation a plaintiff must show (1) "the intentional publication" of (2) "a statement of fact" that (3) is "false," (4) "unprivileged," and (5) "has a natural tendency to injure or which causes special damage." *Smith v. Maldonado*, 72 Cal. App. 4th 637, 645 (1999) (citing Cal. Civ. Code §§ 45 (defining libel), 46 (defining slander)) (citations omitted).

The scope of any action for defamation is circumscribed by the protections of the First Amendment to the United States Constitution.  Consequently, a court "must make an independent examination of the whole record in order to ensure that there is no infringement of free expression." *Moyer v. Amador Valley Joint Union High School Dist.*, 225 Cal. App. 3d 720, 724 (1990) (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990)) (citations omitted).  For example, "pure statements of opinion" and "'statements that cannot reasonably [be] interpreted as stating actual

facts about an individual'" receive Constitutional protection and cannot form the basis of a defamation claim. *James v. San Jose Mercury News, Inc.*, 17 Cal. App. 4th 1, 12, 13 (1993) (quoting *Milkovich*, 497 U.S. at 20) (quotation marks omitted) (brackets in original); *accord Weller v. Am. Broad. Cos.*, 252 Cal. App. 3d 991, 1000 (1991) ("[T]he courts are . . . willing to protect statements that are clearly satirical, hyperbolic, imaginative or rhetorical. . . . Statements of fact that are not provably false also continue to be protected.") (citations omitted); *Moyer*, 225 Cal. App. 3d at 724. When determining whether a statement qualifies as a fact or opinion, the court examines the "totality of the circumstances" and asks "whether a reasonable fact finder could conclude that the . . . statements imply a provably false factual assertion." *Moyer*, 225 Cal. App. 3d at 724-25 (citation & quotation marks omitted). Merely couching a fact in language suggestive of opinion does not automatically protect the statement under the aegis of the First Amendment.

If the contested language remains actionable under the First Amendment, the court also must decide whether the language is defamatory. Whether a statement is "reasonably susceptible to a defamatory interpretation is a question of law for the trial court." *Smith*, 72 Cal. App. 4th at 647; *accord Weller*, 252 Cal. App. 3d at 1002 n.9. If the contested language proves ambiguous or "innocent on [its] face and defamatory only in the light of extrinsic circumstances," the plaintiff must plead and prove that the language as used had an innuendo reasonably making it defamatory to a third party. *Smith*, 72 Cal. App. 4th at 645-46 (citations omitted).

**B. Defendants' Statements Are Not Actionable**

Within their respective contexts, all of the statements that Plaintiff claims to be defamatory are opinions and, therefore, not actionable.[1] Defendant Clark's comment rhetorically questioning how Plaintiff profited from his shorting Myriad Genetics's stock boils down to an unverifiable assertion that Plaintiff provided poor investment advice.[2] *See Moyer*, 225 Cal. App. 3d at 725-26.

---

[1] Because the court finds that Defendant Clark's statements did not defame Plaintiff as a matter of law, Plaintiff's contention that he suffered harm when Clark asked SA to delete Plaintiff's rebuttals, leaving Plaintiff with "no way to respond" (Am. Compl. ¶ 3(g)), is moot.

[2] Even if the court were to examine Clark's remark stripped of its larger context, as Plaintiff desires (*see* Am. Compl. ¶ 3(e)(1)), the court still would conclude that Clark's incorrect assertion that Plaintiff shorted Myriad Genetics's stock at $41 per share rather than $55 lacks innuendo making it "reasonably susceptible to a defamatory interpretation." *Smith*, 72 Cal. App. 4th at 645-46 & n.4 (citations omitted).

The same conclusion applies to Clark's criticism of what he perceived to be Plaintiff's belief that Myriad Genetics would not soon become profitable. Plaintiff stated that he did not believe that the firm's burn rate would decline significantly -- a statement reasonably understood to express doubt about the company's financial prospects -- and Clark disagreed. Clark's comment, whether or not it mischaracterized Plaintiff's viewpoint, cannot be proven true or false; it merely hypothesizes what Myriad Genetics's future may hold. Next, Clark's caustic remark that Plaintiff should "[s]tick with collecting degrees, Doc. May try English next -- one datum leads but many data lead," is a hyperbolic, non-factual insult. *See Moyer*, 224 Cal. App. 3d at 725-26. Douglas's reference to Plaintiff as a "delusional maniac" in an email also amounts to an exaggerated, non-verifiable derision. *See id.* Because all of Defendants' contested statements are opinions and, therefore, receive First Amendment protection, Plaintiff has failed to "plead[] factual content that allows the court to draw the reasonable inference that [Defendants are] liable" for defamation. *Iqbal*, 129 S. Ct. at 1949 (citation omitted); *see Smith*, 72 Cal. App. 4th at 645 (listing "a statement of fact" as element of defamation under California law). Furthermore, since none of Defendants' comments are reasonably susceptible to a defamatory interpretation, it would be futile for Plaintiff to amend the complaint. *See Kor. Kumho Petrochemical Co. v. Flexsys Am. LP*, 370 F. App'x 875, 878 (9th Cir. 2010) (unpublished). Therefore, the case is dismissed without leave to amend.

## IV. Conclusion

For the aforementioned reasons, the court GRANTS Defendants' Motion to Dismiss with prejudice.

IT IS SO ORDERED.

Dated: August 2, 2011

DONNA M. RYU
United States Magistrate Judge